## UNDERWOOD et ux. v. SOUTHERN CITIES DISTRIBUTING CO.

No. 4880.

Court of Appeal of Louisiana.
Second Circuit.

Nov. 2, 1934.

Wm. C. Boone, of Shreveport, for appellants.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellee.

DREW, Judge.

Plaintiffs instituted this suit claiming damages in the sum of $2,000 each, and for $1,000 additional for damages to their minor child, by the defendant company, through its failure to furnish natural gas to them. The case was tried below by a jury and plaintiffs' demands rejected. The verdict was approved and the judgment signed by the lower court; from which judgment, plaintiffs have appealed.

 The defendant, by a franchise granted it by the city of Shreveport, enjoys the privilege, as well as the duty, of furnishing to the residents of the city of Shreveport natural gas. It is granted by law the right to fix reasonable rules and regulations governing the furnishing of gas. It may require its charges to be paid for a reasonable term in advance or to be secured by a reasonable deposit from the consumer, and may enforce such a requirement by the refusal of service to persons who do not comply. A gas company would have to go out of business or else increase the rate charged to paying consumers to meet the loss of revenue through failure of others to pay, if it could not legally protect itself against such loss by requiring cash deposits.

There is no dispute of the fact that the gas was not furnished, and the only questions presented for determination are:

First. Is the rule and regulation fixing the amount of deposit required of plaintiffs reasonable and just?

Second. Did plaintiffs comply with said rule and regulation?

Third. Had defendant waived the right to insist on a compliance with its rule and regulation by plaintiffs?

The disputed facts are immaterial to a determination of the case. The true facts are that J. A. Gallien was renting a house on Anna street in the city of Shreveport, where he was living. He applied to the defendant company for gas and met the required deposit of $5. Several months thereafter, he fell behind in paying his gas bill and was granted an extension of time, which, on April 22, 1933, had elapsed. At this time he was in arrears with the defendant company $8.64, and when one of defendant's representatives called to see him on this date, he was still unable to pay, so the gas was disconnected. Several months prior to this time, Gallien's daughter, her husband, and their child had moved into the house, having leased half of it from Mr. Gallien. The two families were occupying the house on April 27, 1933, when the gas was disconnected by defendant's representative.

On May 1, 1933, the fifth day after the gas had been disconnected, by agreement between Mr. Gallien and his daughter, one of the plaintiffs herein, she took over the house and became responsible for the rent and paid all of the rent money which was paid thereafter until the month of August, when she moved out of the house. Mr. Gallien and his family remained in the house with plaintiffs after plaintiffs took over the lease of the house. On May 1, 1933, Mr. Gallien's daughter, Mrs. Underwood, went to the office of the defendant company and made application for gas service, at which time she made a deposit of $5. The application signed by Mrs. Underwood reads as follows:

"I hereby apply for natural gas service at the address shown opposite my signature, which gas I agree to use at my own risk, and to pay for the same at the rate published from time to time, until you shall have written notice from me to discontinue the supply. This application, when accepted by you, shall, together with your present rules and regulations, a copy of which has been handed the undersigned applicant and which said applicant acknowledges receiving, and such other reasonable rules and regulations as may hereafter be adopted by you, constitute a contract between you and the undersigned applicant. The answers to the questions printed on the reverse hereof are part of this application, and applicant warrants the truth of the facts therein cited. Service will be supplied upon approval of the application and the amount of the deposit by the company. * * *

"I hereby accept said application and certify that a copy of rules and regulations, as set forth above, has been delivered to said applicant.

"_____

"For Gas Company."

On the back of said application are certain questions which plaintiff was required to answer. In answering them, she stated that only one family would use gas off the meter; that the house had six rooms; and that she was not going to keep roomers. In the rules

and regulations fixed by the defendant company, a copy of which plaintiff, in signing the application, admitted she had received, we find the following:

"Rule 7. A reasonable deposit will be required from each applicant. The Company reserves the right from time to time to require an increase in such deposit. A minimum deposit shall be required of at least twice the January bill. Upon the gas being shut off by the Company for any reason other than repairs, the Company may, at its own option, apply such deposit to the payment of consumer's previous bills and to gas furnished to date of shut off."

Another reservation by defendant in its printed rules and regulations is that it shall have the right to shut off gas at any time, on five days' notice, for false representation in the application for service. On the day the application was signed, defendant sent one of its representatives to verify the correctness of the application. The investigation revealed that there were two families, instead of one, living in the house and that it was the same house from which it had disconnected the gas on April 27th, and the same identical persons were occupying the house. The gas was therefore not connected.

On May 3d, two days later, plaintiffs visited the office of their attorney who by telephone demanded of defendant that it connect the gas. The attorney was told that defendant had learned that there were two families in the house who would use gas off the one meter and in such cases it required a deposit of $10; that if the additional $5 were deposited, the gas would be connected that very day. It appears that this information was not given to plaintiffs by their attorney; instead, the present suit was prepared and filed on May 5, 1933, two days later.

After signing the application and depositing the $5, the plaintiffs never in person inquired of the defendant company why the gas was not connected, nor have they ever asked for a return of the $5 deposited; however, two days after making the application they visited their lawyer and this suit followed.

█ Defendant's rule and regulation requiring a deposit of $5 where there is only one family living in the house and $10 when two families are living in the house, using gas off the same meter, is not an unreasonable rule or regulation, and when plaintiffs did not comply with that rule, they were not entitled to be furnished gas. When defendant took plaintiffs' application, Mrs. Underwood stated in writing that only one family occupied the house, and when defendant on investigation found there were two families in the house, it was justified in not connecting the gas. The fact that the two families had been living in the house for several months before with only a deposit of $5 up can avail plaintiffs nothing, as it is shown that when the gas was originally connected there was only one family there, and that plaintiffs moved in at a later date. There is nothing to show knowledge on the part of defendant that the two families were living in the house prior to the investigation made by its representative to verify the application of plaintiffs for gas. There was therefore no waiver by defendant of its rule and regulation as to the amount of deposit it required in this instance.

Plaintiffs make no complaint about the gas being disconnected on April 27, 1933; their sole complaint is because it was not connected on May 1, 1933. The complaint, under the law and facts in this case, is not well founded. The jury that tried the case below so found. Its verdict was approved by the judge below and we find no manifest error which would justify us in disturbing that finding.

It therefore follows that the judgment of the lower court is affirmed, with all costs.