TALIAFERRO, Judge.
Plaintiff owns and operates a gas utility in the City of Shreveport, Louisiana, and by means of a system of pipe lines sells and delivers natural gas to domestic, commercial and industrial customers, and has done so for a number of years. It formulates, adopts and enforces rules and regulations, including schedules of rates, designed to govern its relationship with its customers, all within the purview of orders of the Louisiana Public Service Commission.
Defendant, prior to year 1933, operated in or near the City of Shreveport, what he refers to as a “shop”, and during that year moved same to its present location on Ricou Street in the northern section of the City. Plaintiff supplied the “shop” with gas necessary to its conduct prior to and after its removal. As relocated and reestablished, it consisted of two buildings, one on either side of Ricou Street, designated by municipal numbers 115 and 120. In the building at No. 115 is the office, machine shop, heating plant and a small testing boiler; whereas, the building at No. 120 houses a large boiler with attachments and a warehouse. The whole set-up is now more appropriately referred to as an industrial plant, and was provided with gas on this basis.
In the early part of 1939, defendant realized that the 2-inch meter which was at the No. 115 side of the street was inadequate for his needs, and he applied to ■plaintiff for a larger one. It was first intended to replace the smaller meter with the larger one,- but after some. discussion of the subject with plaintiff’s representative, it was decided to install the larger on the opposite side of the street, and not remove the smaller one. This arrangement provided the plant with two meters, each serving that part of the plant on its side of the street.
The increased consumption of gas gave to the plant a status that, under the rules of the Louisiana. Public Service Commission, necessitated the signing of special contract by the panties, and .this was done annually thereafter. ■ ■ ... •
The contracts between- them providing for the delivery of gas for the years 1945, 1946 and 1947 carry the following rule, *648 not found in prior contracts, which is designated No. 8 of the several, to-wit:
“Separate customer premises shall be metered and billed separately even if under common ownership, and combined metering or billing shall not be permitted. Such premises shall be considered separate when not on the same tract, or contiguous tracts of land, or when each is a complete ‘unit’, not physically integrated with or essentially a part of the. other, or others and each renders a complete service or produces a finished product. Tracts of land separated by public streets, roads or alleys-shall be considered non-contiguous tracts.”
Through error on the part of plaintiff’s employees, in each contract the plant is described as being at No. 115 Ricou Street, and as a consequence both of the meters were identified on its records as being on that side of the street. Of course, when it came to making up bills at the end of each month the description in the contract was the guide in determining ■ the rate or rates applicable to the consumption for the month. The error was not' discovered until early in 1948.
The schedule of rates in the contracts discloses that the more gas one consumes, the cheaper by thousand cubic feet it becomes. It is therefore self-evident that to calculate the cost of gas consumed through both meters (combined) for a given time, a lesser result is obtained than if calculated separately. This difference for the years 1945, 1946 and 1947 and through September of 1948, amounts to $441.51. Demand for payment of this amount was refused by defendant and this suit to recover judgment therefor was then instituted. Plaintiff prevailed below. Defendant appealed from a judgment against him for the amount for which he was sued.
Defendant does not challenge the correctness of the calculation submitted by the plaintiff in arriving at the amount for which it sues. He resists the demand on the following grounds, to-wit:
1. That a public utility is without legal right to change conditions of its renewal contracts so as to have the effect of dividing (geographically) an industrial plant in such way as to increase the cost of gas to the consumer;
2. That rule No. 8 violates the Louisiana Public Service Commission’s order No, 647, as amended by orders Nos. 876 and 941, in that the rule’s operative effect works a “discrimination in rates as between customers”, prohibited by said orders.
We shall discuss and dispose of these defenses in reverse order. It is provided in the referred to order of the Louisiana Public Service Commission, as follows, to-wit:
“Consumers * * * using gas for industrial purposes and those consumers who use gas under boilers shall be served under special contracts, at rates to be agreed upon between the Utility and such consumers, provided, however, that in no case shall there be discrimination in rates as between such consumers engaged in the same character of business and using substantially the same quantities of gas under the same load factor and under the same circumstances * * * ”,
In support of this defense it is argued that rule No. ,8 discriminates against defendant and others of like situation and in favor of persons whose plants are entirely on the same side of a street or on the same or contiguous tracts of land.
To begin with, it is well to note that the contracts involved herein were freely signed by the defendant, who, the law presumes, was cognizant of the import of all of its provisions, although as a fact, he may not have been. He does not plead error.
The assailed rule is not unreasonable on its face, and a strong presumption arises therefrom that it is reasonable in its operative effect and not discriminative. 38 C.J.S., Gas, § 21, p. 651. The burden rested upon defendant to sustain his position on this defense.
The rule was designed to affect a class of industrial customers, out of the ordinary, by eliminating separate 'billing where more than one meter was being used.
*649 The order of the Louisiana Public Service Commission, quoted supra, with respect to users of gas for industrial purposes and under boilers, contains the following “must”, viz: (a) special contract between the parties; (b) rates shall be agreed upon; (c) no discrimination in rates as between consumers engaged in the same character of business, etc. * * * and under the same circumstances.
We believe the rule meets fully the requirements of this order with respect to uniformity in its operative effect. Industries whose plants are divided by a street form a class and the rule certainly applies uniformly to that class. They are “under the same circumstances”. In formulating and putting into effect this rule, the appellee was but exercising the power, inherent in every public utility, to make and enforce reasonable rules and regulations for the promotion of its business. Underwood v. Southern Cities Distributing Co., La.App., 157 So. 160.
With respect to defense No. One, given above, what we have said in discussing number Two has the same application.
Defendant testified that when the larger meter was installed, he hesitated to ■ consent that It be placed across the street, but after examining his contract with plaintiff, and finding nothing therein to prevent this being -done, nor anything that 'would be prejudicial to him financially or otherwise, and being assured by plaintiff’s agent, in charge of the meter that the consumption registered by the two meters would be combined as formerly, to determine the applicable rates to be charged for gas consumed, he objected no further. He contends ■ that the plaintiff should be held bound by the action of its agent. In effect, this position is in the nature of a plea of estoppel. We think it untenable. In the first place, a public utility is not bound by the action of one not shown to have had authority to commit it on any given subject; and, in the second place, a public utility has the unquestioned right to alter, change and/or modify its rules and regulations so long as they remain not unreasonable nor discriminatory; and, in the third place, to accede to defendant’s contention on this score would clearly be discriminating against others of the class who are being compelled to pay on each meter. The testimony discloses that plaintiff has other customers whose plant is-divided by a street. And, finally, defendant signed three contracts in which this rule was incorporated, all after the second meter was installed, and bound himself thereto.
Defendant also argues that had he known that such a rule as No. 8 would be adopted, he would have built his plant entirely on one side of the street and thus have obviated the situation that now confronts him. As an astute' business man, defendant should have known, or anticipated, that plaintiff’s rate schedules, rules and regulations were not perpetual; that conditions change and with them come needed changes to meet the new conditions. It may be that he did no,t anticipate that his business would be so successful as to outgrow the small meter that served satisfactorily for several years, and as a consequence made imperative the installation of a larger one.
The contract between plaintiff and defendant, signed on December 10, 1946, was for a term of seven years, beginning January 24, 1947. At that time defendant’s business had grown to the proportions that the supply of gas through a two-inch line was inadequate. Plaintiff agreed to lay a four-inch line to his plant, 2,575 feet long, and - this ■ was done. Defendant was required to pay the cost of laying the line, referred to as connection charge, $1,545,00, and he did so under a refunding agreement whereby for the ensuing seven years plaintiff would pay over to him annually twenty per cent of the revenues received by it “from natural gas deliveries” to him during that period. This agreement is incorporated in the contract.
As a collateral argument, defendant contends that billing him separately . (by meters) for gas consumed violates the terms of the refunding agreement in that the “twenty per cent rebate covers only gas purchased through one meter”, and *650 this would not repay the $1,545.00 in seven years. Defendant is in error in this respect. .The twenty per cent annual payments is 'based upon “natural gas deliveries”. No reference is expressly made to a meter or meters. It is obvious that by separate billing the twenty per cent of annual revenues will be greater than it has been under combined billing, assuming that consumption will be the same, or nearly so.
Therefore, for the reasons herein assigned, the judgment from which appealed, is affirmed with costs.